829 F.Supp. 317 (1993)
FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,
v.
F.S.S.S., an Alaska partnership; et al., Defendants.
No. A92-719-CIV.
United States District Court, D. Alaska.
June 4, 1993.
*318 *319 Robert C. Auth, Staff Atty., F.D.I.C., Anchorage, AK, for plaintiff.
David H. Bundy, Bundy & Christianson, Anchorage, AK, for defendants.

ORDER
SEDWICK, District Judge.
Plaintiff Federal Deposit Insurance Corporation (FDIC) has pending before this court two motions: a Motion to Dismiss Certain Counterclaims for Lack of Jurisdiction and Failure to State a Claim, and a Motion for Partial Summary Judgment. The Motion to Dismiss Counterclaims is directed at defendants' first and second counterclaims for negligence and interference with a prospective contract respectively. Additionally, FDIC has moved for partial summary judgment on its claims for default of two promissory notes. Defendants F.S.S.S., Thomas A. Fink, Donald C. Schroer, David P. Swanson, Marie O. Swanson, Patricia A. Fink, and LaVonne D. Schroer (collectively, the "defendants") opposed both motions. Defendants have also requested that the court stay the present proceedings so that they may pursue administrative relief against FDIC arising from its management of a separate loan obligation.

FACTS
FDIC seeks a judgment against defendants Thomas A. Fink, Donald C. Schroer, David Swanson, and Marie Swanson, jointly and severally, on two promissory notes dated November 5, 1984, one in the principal amount of $500,000 (First Note) and the second in the principal amount of $1,200,000 (Second Note). The First Note was secured by a second deed of trust on real property commonly referred to as the FSSS Building.[1] The Second Note is secured by a deed of trust on real property commonly referred to as the 5th Avenue Property, located at 1801 East 5th Avenue, Anchorage, Alaska.[2] *320 FDIC sues defendants Patricia Fink and LaVonne Schroer on their guarantees on both notes.[3]
Defendants raise several affirmative defenses and counterclaims against FDIC arising from FDIC's alleged failure to promptly approve a transaction involving the security for the First Note. First Interstate Bank of Oregon held 90 percent of the beneficial interest in another promissory note made and guaranteed by the defendants, originally to Alaska Mutual Bank (the "Senior Note"). The Senior Note was secured by a senior deed of trust on the FSSS Building, the same property securing defendants' obligation under the First Note. As a result of AMB's failure, FDIC also acquired AMB's remaining 10 percent interest in the Senior Note and status as servicing institution. In March 1990, FDIC sold its remaining interest in the Senior Note to First Interstate, which recently foreclosed on the FSSS Building.
In November 1989, defendants Schroer, David Swanson, and Marie Swanson met with First Interstate to discuss defendants' obligations with respect to the Senior Note. First Interstate agreed to discount defendants' obligations on the Senior Note by $800,000, and to accept $600,000 in full settlement of FSSS' obligations. As a condition to the settlement, First Interstate required defendants to obtain approval from FDIC. The FDIC required full payment of their participation interest. Defendants maintain that they were able and willing to meet this demand.[4]
FDIC never approved the transaction. But for FDIC's actions, argue defendants, the First Note would have been fully secured by the property. Further, defendants argue that had the transaction occurred, defendants would have been able to meet their other obligations, including the Second Note. Defendants assert setoff, comparative negligence and impairment of collateral as affirmative defenses. Additionally, defendants assert counterclaims for negligence, interference with a prospective contract, and that FDIC breached its express and implied contractual duties as lender and servicing agent on the transaction. In sum, defendants argue that FDIC wrongfully refused to approve the discount, and that refusal to do so requires that their obligation be reduced by the lost benefit.

DISCUSSION
The undisputed facts demonstrate that defendants are liable. Defendants do not dispute that they are obligated to plaintiff under the First and Second Notes, and that they are in default on those notes.[5] Therefore, FDIC has demonstrated its right to summary judgment on the promissory notes.
Once the moving party points out why no genuine issues of fact exist, the party resisting summary judgment must set forth "specific facts showing that there is a genuine issue for trial."[6]Celotex Corp. v. Catrett, *321 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In resolving the motion for summary judgment, all reasonable inferences will be drawn in favor of the nonmovants. Anderson v. Liberty Lobby, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). However, where the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence to defeat summary judgment than ordinarily would be required. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
Defendants argue that material questions of disputed fact exist that preclude summary judgment. Defendants rely upon the questions raised in their affirmative defenses and counterclaims; that FDIC negligently failed to approve the discount offered by First Interstate to defendants, interfered with a prospective contract, and breached its express and implied contractual duties as lender and servicing agent of the Senior Note. Defendants claim that FDIC's failure to approve the settlement on the Senior Note either discharges their obligations under the First and Second Notes or, at a minimum, entitles defendants to setoff their losses against the amounts owed under those notes.

I. FEDERAL TORT CLAIMS ACT
FDIC argues that defendants' counterclaims do not preclude summary judgment because defendants failed to comply with the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq. Specifically, FDIC argues that defendants failed to file an administrative claim with it, as the responsible agency, prior to bringing their counterclaims as required by 28 U.S.C. § 2675(a).[7] Defendants respond that their counterclaims are in the nature of setoff, and, therefore, the FTCA does not apply. Defendants assert in their counterclaims that FDIC negligently refused to approve the discount, and tortiously interfered with a prospective contract, damaging them in excess of $800,000. Defendants also assert setoff as an affirmative defense.[8]
The doctrine of sovereign immunity dictates that the government may be sued only on such terms as it may prescribe. Loeffler v. Frank, 486 U.S. 549, 555, 108 S.Ct. 1965, 1969, 100 L.Ed.2d 549 (1988). The FTCA waives sovereign immunity for tort claims against the United States and is generally recognized as applicable to claims against FDIC. Safeway Portland Employees' Federal Credit Union v. Federal Deposit Ins. Corp., 506 F.2d 1213, 1215 (9th Cir. 1974).[9] However, to bring a tort claim against a federal agency, one must comply with all statutory prerequisites, including the requirement that the plaintiff first bring its claim before the responsible federal agency, 28 U.S.C. § 2675(a), and must sue the United States rather than the federal agency, 28 U.S.C. § 2679(a). These requirements are jurisdictional and may not be waived. Spawr v. United States, 796 F.2d 279 (9th Cir.1986).
Equally well established is the principle that once the United States brings a suit, it waives sovereign immunity to the extent that defendants may have a compulsory *322 counterclaim.[10]Id. Claims for recoupment are compulsory counterclaims under Fed.R.Civ.P. 13(a), but a claim for setoff states a permissive counterclaim under Rule 13(b). Federal Deposit Ins. Corp. v. Carter, 701 F.Supp. 730, 733 (C.D.Cal.1987).[11] A claim for recoupment is one that: 1) arises from the same transaction or occurrence as the government's claim, 2) seeks relief of the same kind or nature, and 3) seeks an amount not in excess of the government's claim. Frederick v. United States, 386 F.2d 481, 488 (5th Cir.1967).
The threshold question presented by defendants' counterclaims is whether the Senior Note constitutes a separate obligation or is part of the "same transaction or occurrence" as the First and Second Note. The parties agree that the defendants and Alaska Mutual Bank entered into the Senior Note sometime in the mid-1970's, several years prior to the creation of the First and Second Notes. Although the parties to all the notes were identical, as was the security for the Senior and First Notes, the Senior Note clearly constitutes a separate contract and a separate obligation entered into by the parties years prior to the obligations upon which they are sued today. The Senior Note was not part of the same transaction or occurrence as the First or Second Notes.
The acts giving rise to defendants' counterclaims pertain to their obligations under the Senior Note. Defendants, therefore, do not have compulsory counterclaims for recoupment, but rather permissive counterclaims for setoff. Because defendants' counterclaims are not compulsory, defendants must comply with the FTCA. Because they have not, the court is without jurisdiction to decide defendants' counterclaims.
The court notes that even if defendants had complied with the above requirements, and assuming FDIC owed a duty to defendants to competently manage the Senior Note, the alleged failure to do so does not aid defendants. The discretionary function exception to the FTCA bars any claim against FDIC:
based upon an act or omission of the Government, exercising due care, in the execution of a statute or regulation ... or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency ... whether or not the discretion involved be abused.
28 U.S.C. § 2680(a).
The decision to accept or reject the proposed settlement on the Senior Note involved "an element of judgment or choice," and, therefore, rested within the sound discretion of FDIC. United States v. Gaubert, 499 U.S. 315, ___, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991). The FDIC, therefore, is not amenable to defendants' permissive counterclaims for its alleged tortious conduct related to its actions on the Senior Note.
Defendants urge the court to stay the present action should it conclude that the FTCA applies. The FTCA requires a party wishing to sue the United States to file a claim with the agency prior to instituting an action in district court. This requirement is jurisdictional. Gregory v. Mitchell, 634 F.2d 199, 204 (5th Cir.1981) (jurisdiction to sue the United States must exist at time of filing of counterclaim, the action may not be held in abeyance while administrative remedies are pursued).[12] Thus, defendants have not raised a sufficient basis to stay this action.

*323 II. IMPAIRMENT OF COLLATERAL
Defendants deny that they are liable to FDIC on the First and Second Notes because FDIC's refusal to approve the discount offered them by First Interstate Bank of Oregon impaired the collateral under Uniform Commercial Code (UCC) § 3-606(1)(b).[13] Alaska has adopted UCC § 3-606(1)(b), which provides: "[t]he holder discharges any party to the instrument to the extent ... the holder ... unjustifiably impairs the collateral for the instrument...." AS 45.03.606(a)(2). Defendant argues that the failure to approve the discount "prevented the Defendants from improving the security for the second deed of trust, FDIC's `First Note,' which later became unsecured due to First Interstate's non-judicial foreclosure." Courts have applied UCC § 3-606 against the FDIC in limited circumstances where a debtor complains of post-receivership conduct impairing its collateral. See Federal Deposit Ins. Corp. v. Blue Rock Shopping Center, 766 F.2d 744, 749-51 (3d Cir.1985).
The court must first resolve who may assert the defense under Alaska law. The language of the statute states that if a holder unjustifiably impairs the collateral securing an instrument, "any party to the instrument" is discharged. The broad language of AS 45.03.606(a)(2) would appear to include all defendants. However, the official comment to UCC § 3-606 makes clear that the defense is available only to sureties. Official Code Comment to UCC § 3-606.[14] The majority of jurisdictions to consider the issue limit the scope of UCC § 3-606 to sureties, including accommodation makers. John S. Herbrand, Annotation, Who is Party Discharged on Negotiable Instrument to Extent of Holder's Unjustifiable Impairment of Collateral, Under U.C.C. § 3-606(1)(b), 93 A.L.R.3d 1283. Under the majority rule, the impairment of collateral rule is unavailable to makers of negotiable instruments. Great Southwest Life Ins. Co. v. Frazier, 860 F.2d 896, 900-01 (9th Cir.1988); Federal Deposit Ins. Corp. v. Blanton, 918 F.2d 524 (5th Cir.1990).
The Ninth Circuit's decision in Great Southwest Life Ins. Co. v. Frazier, 860 F.2d 896, 900-01 (9th Cir.1988) is instructive. In Frazier, the Small Business Administration (SBA) held a second mortgage on a 7,420 acre ranch. When the mortgagor defaulted, both the first mortgagee and SBA filed for foreclosure and deficiency judgments. SBA agreed to take 120 acres of land in exchange for transferring their second mortgage rights to the first mortgagee. SBA claimed that it reserved its right to seek the deficiency against the mortgagor, but the mortgagor argued that SBA had agreed to take the 120 acres in full settlement of mortgagor's obligations. On appeal, mortgagor claimed that SBA impaired her collateral under UCC § 3-606(1)(b) by agreeing to take only 120 acres.
The court noted that the majority rule, although undecided in Idaho, did not allow a maker of a note to assert impairment of collateral as a defense. Id. at 900-01. The court observed that Idaho case law indicated that it would follow the majority rule, and concluded: "uncertainty as to Idaho's law should be resolved in favor of the overwhelming majority's rule, in furtherance of the *324 goals of administering federal programs uniformly and accommodating the expectations on which private parties' commercial relations are based." Id. at 901.
This court does not have the benefit of Alaska decisions interpreting AS 45.03.606, Alaska's analog to UCC 3-606. Alaska's Supreme Court has not considered the specific issue, nor has it commented on § 3-606 in general. However, the Official Code Comment to UCC § 3-606, and the weight of authority, convince the court that Alaska would apply the majority rule. Any doubts that the court may have on the issue are resolved by the Ninth Circuit's instructions in Frazier that any ambiguity should be resolved in favor of the majority rule. Therefore, the court concludes that defendants Thomas A. Fink, Donald C. Schroer, David Swanson, and Marie Swanson, as co-makers, may not assert a defense under AS 45.03.606(a)(2).[15]
Defendants Patricia Fink and LaVonne Schroer guaranteed both the First and Second Notes. Each is clearly a "party" for purposes of AS 45.03.606(a)(2). However, AS 45.03.606(a)(2) applies only to parties to an "instrument," which is defined as a negotiable instrument. See AS 45.03.102(a)(5). To constitute a negotiable instrument, a document must be signed by the maker, contain an unconditional promise to pay a sum certain, be payable on demand or at a definite time, and be payable to order or bearer. See AS 45.03.104(a).
Defendants Patricia Fink and LaVonne Schroer executed separate documents apart from the promissory notes that they guaranteed. Importantly, the promissory notes do not reference or incorporate the guaranties. Contrast Honolulu Federal Sav. and Loan Ass'n v. Murphy, 7 Haw.App. 196, 753 P.2d 807 (1988). Neither guaranty at issue contains an unconditional promise to pay a sum certain. Gregoire v. Lowndes Bank, 176 W.Va. 296, 342 S.E.2d 264 (1986); see also Honolulu Federal Savings and Loan Association v. Murphy, 753 P.2d at 814-15. Neither guaranty is a negotiable instrument. Therefore, defendants Patricia Fink and LaVonne Schroer cannot assert impairment of collateral as an affirmative defense under AS 45.03.606(a)(2).

III. COMMERCIAL REASONABLENESS
Defendants also raise UCC § 9-504 as the basis for their third counterclaim and argue that FDIC failed to dispose of the collateral in a commercially reasonable manner. Defendants detail their argument with nothing more than vague references to abstract concepts of reasonableness and conclude that had FDIC disposed of the collateral in a commercially reasonable manner "there might have been no loss." This argument is totally lacking in factual or legal support. It is important to note that First Interstate, not FDIC, disposed of the collateral at issue.

IV. MOTION FOR CONTINUANCE UNDER RULE 56(f)
Defendants request that, should the court conclude summary judgment is appropriate, they be given 120 days to conduct additional discovery. Defendants say in a footnote that they would request FDIC and First Interstate to produce documents and would depose the loan officers in charge of the FSSS loans at both institutions. A party seeking a Rule 56(f) continuance must show how additional discovery would preclude summary judgment. Mackey v. Pioneer National Bank, 867 F.2d 520, 524 (9th Cir.1989).
Additional discovery will not affect the resolution of this case. For the reasons stated above, defendants' affirmative defenses and counterclaims do not affect their obligations under the First and Second Notes. Defendants have not presented any reason why resolution of this case should be further delayed, nor have they made a sufficient showing that further discovery would raise a triable issue of fact. VISA Intern. Service Ass'n v. Bankcard Holders of America, 784 F.2d 1472, 1475 (9th Cir.1986).
*325 IT IS THEREFORE ORDERED THAT:
Plaintiff Federal Deposit Insurance Corporation's Motion for Partial Summary Judgment (Docket No. 18) is GRANTED. Plaintiff's Motion to Dismiss Certain Counterclaims for Lack of Jurisdiction and Failure to State a Claim (Docket No. 19) is also GRANTED. Defendants' Motion for Stay of Action Pending Resolution of Federal Tort Claims Act Proceeding (Docket No. 23) is DENIED. Defendants' request for additional time to conduct discovery under Fed. R.Civ.P. 56(f) is also DENIED.
NOTES
[1] The First Note is secured by property, more fully described as:

Lot 4A, Block 4A, MORANDS SUBDIVISION, according to Plat No, 76-212, Anchorage Recording District, Third Judicial District, State of Alaska
[2] The Fifth Avenue Property is more fully described as:

Lot Three "A" (3A), Block Thirty-one "C" (31C), FOURTH ADDITION TO THE TOWNSITE OF ANCHORAGE, according to the official plat thereof, filed under Plat Number 65-37, Records of the Anchorage Recording District, Third Judicial District, State of Alaska, formerly known as the West one-half (W½) of Lot Two (2), all of Lot Three (3), Block Thirty-one ("B") (31B), FOURTH ADDITION TO THE TOWNSITE OF ANCHORAGE, according to the official plat thereof, filed under Plat Number C-154, Records of the Anchorage Recording District, Third Judicial District, State of Alaska
[3] Both notes were originally held by Alaska Mutual Bank (AMB). AMB was subsequently merged into Alliance Bank. On April 21, 1989, the State of Alaska, Department of Commerce and Economic Development closed Alliance Bank and appointed the FDIC as receiver. The FDIC, as receiver, transferred the defendants' obligations to the FDIC, in its corporate capacity, on April 21, 1989, as well.
[4] The FDIC challenges defendants' recitation of the material facts as inadmissible hearsay evidence pursuant to Fed.R.Evid. 802. A defendant may not resist summary judgment based upon inadmissible evidence. Blair Foods, Inc. v. Ranchers Cotton Oil, 610 F.2d 665, 667 (9th Cir.1980). The court need not decide these evidentiary issues given its conclusions based on the facts as presented by defendants.
[5] Defendants denied breaching the terms of the First and Second Notes in their Answer. However, FDIC submitted the affidavit of Stuart Adair to establish that defendants have breached their obligations under the First and Second Notes and are currently in default. Defendants have not controverted these facts.
[6] Although the FDIC moved to dismiss the defendants' counterclaims under Fed.R.Civ.P. 12(b)(6), defendants opposed the motion and introduced additional facts beyond the scope of the pleadings. Thus, the court considers both motions as motions for summary judgment. Fed. R.Civ.P. 12(b).
[7] 28 U.S.C. § 2675(a) provides:

An action shall not be instituted upon a claim against the United States which has been presented to a federal agency, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the government while acting within the scope of his authority, unless such federal agency has made final disposition of the claim.
[8] Defendants also assert as an affirmative defense that any losses sustained by FDIC are the result of its own negligence. This affirmative defense sounds in tort and is inappropriate to FDIC's contract action. The negligence claim is just that: a claim, not a defense. See n. 11, infra.
[9] Defendants alluded to the "sue and be sued clause" contained in FDIC's enabling statute, 12 U.S.C. § 1819, in their opposition and at oral argument. Although the "sue and be sued" language is a general waiver of sovereign immunity, it does not expand the limited, specific waiver of the sovereign immunity for tortious acts specified by the FTCA. Meyer v. Fidelity Savings, 944 F.2d 562, 566 (9th Cir.1991), cert. granted ___ U.S. ___, 113 S.Ct. 1576, 123 L.Ed.2d 145 and cert. denied, ___ U.S. ___, 113 S.Ct. 1578, 123 L.Ed.2d 146 (1993); Pereira v. United States Postal Service, 964 F.2d 873, 876-77 (9th Cir.1992).
[10] Likewise, a defendant asserting a compulsory counterclaim against the FDIC need not sue the United States instead of the federal agency as otherwise required under 28 U.S.C. § 2679(a). FDIC v. Carter, 701 F.Supp. 730, 733 (C.D.Cal. 1987).
[11] Defendants claim that there are no functional differences between affirmative defenses and counterclaims. They are mistaken. Affirmative defenses challenge the underlying liability. Counterclaims are separate claims independent of the plaintiff's underlying claim. Fed.R.Civ.P. 13(c). Although common practice may be to plead the same conduct as both, they are separate and distinct pleadings accomplishing different ends. Defendants' affirmative defense of setoff is actually a separate claim against the plaintiff and, therefore, is properly considered a counterclaim. Fed.R.Civ.P. 8(c).
[12] FDIC also maintains that defendants' first and second counterclaims should be dismissed as untimely under 28 U.S.C. § 2401(b). Because the court finds that the first and second counterclaims are barred by the FTCA, it declines to address the application of the statute of limitation to defendants' counterclaims.
[13] The parties do not address the source of the law to be applied to defendants' affirmative defenses and counterclaims. Actions involving the FDIC are not brought under diversity jurisdiction, but under federal question jurisdiction pursuant to 28 U.S.C. § 1346 and 12 U.S.C. § 1819. Thus, federal law governs the resolution of defendants' affirmative defenses and counterclaims. The Ninth Circuit has previously adopted the state of Idaho's version of UCC § 3-606 as federal common law to resolve impairment of collateral arguments involving another federal agency, the Small Business Agency. Great Southwest Life Ins. v. Frazier, 860 F.2d 896 (9th Cir.1988). This court will apply Alaska law as federal common law governing impairment of collateral.
[14] The Official Code Comment to UCC § 3-606 states:

The words "any party to the instrument" remove an uncertainty arising under the original section. The suretyship defenses here provided are not limited to parties who are "secondarily liable," but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so.
[15] Both the First and Second Notes, individually signed by defendants Thomas A. Fink, Donald C. Schroer, David Swanson, and Marie Swanson, state: "each and every party signing or endorsing this note, ... binds himself thereon as a principal, not as a surety...."