**DIVERSIFIED FINANCIAL SYSTEMS, INC., Appellant–Defendant,**

v.

**Timothy MINER and Caroline Kay Miner, T.L. Miner Enterprises, Inc., Warsaw Federal Savings and Loan Association n/k/a Mutual Federal Savings Bank, First National Bank of Elkhart n/k/a Society Bank, Treasurer of Kosciusko County, Appellees–Plaintiffs.**

No. 43A03–9811–CV–473.

Court of Appeals of Indiana.

June 15, 1999.

John C. Drier, Blachly, Tabor, Bozik & Hartman, Valparaiso, Indiana, Attorney for Appellant.

Jerilyn Southwick, Deputy Attorney General, Indianapolis, Indiana, Vern K. Landis Rockhill, Pinnick, Pequiont, Helm, Landis & Rigdon, James Walmer, Michael L. Miner, Valentine & Miner, Warsaw, Indiana, Attorneys for Appellees.

## OPINION

BAKER, Judge

Appellant-counterclaim defendant Diversified Financial Systems, Inc. (Diversified) appeals the trial court's denial of its motion for summary judgment regarding the counterclaim of appellees-counterclaim plaintiffs Timothy and Caroline Miner, T.L. Miner Enterprises, *et al.* ("the Miners"). Specifically, Diversified argues that the promissory note on which it sought foreclosure was unrelated to a "floor plan," which the Miners assert in their counterclaim was related to the note.

Diversified contends that there was no genuine issue of material fact regarding the Miners' counterclaim and that the trial court thus erred in denying its motion for summary judgment.

## FACTS

On February 12, 1988, the Miners borrowed $30,000 from Liberty Bank and Trust Company (Liberty Bank) in order to pay to Tim Miner's sister her share of their deceased mother's home. To secure the loan, the Miners delivered to the bank a mortgage on the property. The Miners have discontinued payment on the February 1988 loan since June 1989.

On April 28, 1988, the Miners executed and delivered to Liberty Bank and Trust Company a commercial note promising to repay the principal sum of $160,193.99, together with 12% interest, in monthly installments of $4,218.52. The note indicated that it was secured by a separate security agreement dated April 28, 1988. However, the security agreement does not appear in the record. The note also designated two mortgages as collateral "[i]n addition to any property described" elsewhere in the note. The only other reference to collateral in the note was the reference to a security agreement. The Miners have not made a payment upon this note since at least November 28, 1988. The Miners discontinued payment approximately when the Federal Deposit Insurance Company (F.D.I.C.) took Liberty Bank into receivership.[1]

On September 8, 1994, Diversified filed a complaint, as assignee of the F.D.I.C., regarding the Miners' failure to make payments on the promissory note and seeking to foreclose on the real estate mortgages which were designated as additional collateral in the note. The Miners filed an answer and counterclaim alleging that the note executed in April 1988 was related to the floor plan for vehicles to be sold by T.L. Miner Enterprises, Inc. and was to be paid from the proceeds of sales of those vehicles, while the mortgages listed in the note were only secondary security for the loan. The Miners also maintain that the February 1988 loan was related to the April 1988 loan in that Liberty Bank was aware that proceeds from the sale of Tim's antique cars were the means to pay both loans, and so informed the F.D.I.C. when it took the bank into receivership. The Miners further contend that the F.D.I.C. and its successor-in-interest, Diversified, refused to release the vehicle titles which were the primary collateral for the April 1988 loan, thus making sales of the Miners' antique cars impossible and resulting in the failure of the Miners' business. Furthermore, the Miners argued that the refusal was wrongful and malicious and had prevented them from performing under the promissory notes. Thus, the Miners counterclaimed for damages that they suffered.

The record shows that a floor plan, dated January 22, 1988, indeed existed, and the dispute is essentially whether the floor plan had any relation to the subsequent February 1988 or April 1988 loans. The affidavit of Paul Reith, the loan officer at Liberty Bank who originally handled the notes in question, and the affidavit of Tim Miner, state that the loans were part of the floor plan agreement but that the F.D.I.C. failed to maintain records which would have conclusively demonstrated this fact.

On December 22, 1994, Diversified answered the Miners' counterclaim, asserting that it was a holder in due course and therefore not subject to the defenses asserted by the Miners. Diversified further asserted that the Miners' counterclaim was barred by waiver, laches and estoppel. Diversified then filed a motion to amend its responsive pleading on December 1, 1997, to include the defenses that the court had no subject matter jurisdiction over the counterclaim of the Miners, and that, as the assignee of the F.D.I.C., it was entitled to immunity pursuant to the Federal Tort Claims Act, 28

---

1. The F.D.I.C. became receiver of Liberty Bank on October 3, 1988. R. at 132. We note that Diversified argues simultaneously that the Miners defaulted after the involvement of the F.D.I.C., and also that they defaulted before the involvement of the F.D.I.C. Appellant's brief at 16, 19.

U.S.C. § 2671 *et seq.*, (FTCA).[2] Diversified further claimed that the Miners' counterclaim was barred by the Statute of Limitations.[3]

Diversified subsequently filed a new motion for summary judgment on January 26, 1998. Diversified abandoned the argument that it was a holder in due course and instead alleged that the Miners' counterclaim was permissive and therefore could be pursued only according to the requirements of the FTCA; that Diversified was entitled to immunity from the counterclaim; that the contracts were clear and that the Miners had breached the contract; and that, despite bringing a claim sounding in tort, the Miners had not established that Diversified owed them a duty. Following a hearing on Diversified's motion for summary judgment, the trial court denied the motion on August 27, 1998. Thereafter, the trial court certified its order for interlocutory appeal. We accepted the appeal on December 15, 1998.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Our standard of review for the denial of a motion for summary judgment is the same as that of the trial court. *Shumate v. Lycan*, 675 N.E.2d 749, 752 (Ind.Ct.App. 1997), *trans. denied.* Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). This court may consider only matters which were designated at the summary judgment stage of the proceedings. *Shumate*, 675 N.E.2d at 752. We give careful scrutiny to the pleadings and designated materials, construing them in a light most favorable to the non-movant. *Thomas v. State*, 698 N.E.2d 320, 322 (Ind.Ct.App.1998), *trans. denied.* Finally, a trial court's decision on a motion for summary judgment enters the process of appellate review clothed with a presumption of validity. *Brunner v. Trustees of Purdue University*, 702 N.E.2d 759, 760 (Ind.Ct.App.1998), *trans. denied.*

### II. Arguments for Summary Judgment Regarding Counterclaim

#### A. Genuine Issue of Material Fact

Diversified first argues that the trial court erred in denying its motion for summary judgment because the Miners do not demonstrate in their opposition to the motion for summary judgment that a genuine issue of material fact remains for trial. Diversified requests summary judgment based upon its argument that, as assignee of the F.D.I.C., it held a promissory note signed by the Miners, that the Miners have defaulted upon the note since at least November 28, 1988, and that Diversified is entitled to foreclose upon the mortgages listed in the notes.

■ We note that when a movant's motion for summary judgment presents sufficient facts to support the motion, the non-movant must designate specific facts which preclude entry of summary judgment. *Ramon v. Glenroy Constr. Co., Inc.*, 609 N.E.2d 1123, 1127 n. 2 (Ind.Ct.App.1993), *trans. denied.* To preclude entry of summary judgment in such a case, the non-moving party must set forth specific facts indicating that there is a genuine issue in dispute. *Gehlbach v. Hawkins*, 654 N.E.2d 877, 879 (Ind.Ct. App.1995).

■ In the instant case, Diversified designated the April 1988 note, which distinctly states that the loan was secured by a separate "security agreement dated April 28, 1988." R. at 205. The security agreement, however, was not made a part of the record. The two mortgages upon which Diversified seeks foreclosure are listed as collateral "[i]n addition to any property generally described above," and the only such description is the

**2.** The FTCA waives governmental immunity from tort claims against federal agencies and provides statutory requirements to bringing a claim against a federal agency.

**3.** Also on December 1, 1997, Diversified filed a motion to amend caption to show its assignment of the notes and mortgages at issue to Commer-

cial Loan Services, Inc. (Commercial), and Commercial filed a motion for summary judgment. On January 5, 1998, the trial court denied the motion to amend caption and required Diversified to file a new motion for summary judgment. Diversified then proceeded as the attorney-in-fact authorized to prosecute this case.

reference to the security agreement. R. at 205. The purpose of the credit is indicated on the same note as "Bus. [Business] Consolidate comm. [commercial] notes." R. at 205. The affidavit of Liberty Bank's loan officer Reith, and Tim Miner's affidavit, support a connection between the previously dated floor plan and the notes in question here. R. at 112, 264. The fact that the security agreement is missing from the record also supports the allegation by Reith that the F.D.I.C. may have lost important documents after it took the bank into receivership. R. at 263–4.

We conclude that Diversified has failed to demonstrate that there are no issues of material fact, while the Miners designate genuine issues of material fact. We find that Diversified's designated materials themselves suggest that summary judgment is inappropriate. Thus, regarding this threshold issue, the trial court could have properly denied Diversified's motion for summary judgment. We will next consider other arguments for summary judgment raised by Diversified.

### B. *Immunity From Counterclaim*

Diversified next argues that it is immune from the counterclaim because its assignor, the F.D.I.C., was immune from the same claim. Diversified asserts that the FTCA requires complaints regarding a federal agency to be filed first with that agency. *F.D.I.C. v. F.S.S.S.*, 829 F.Supp. 317, 321 (D.Alaska 1993). Diversified further argues that the Miners are bringing a permissive counterclaim rather than a compulsory counterclaim, and that the F.D.I.C. and Diversified are immune from permissive counterclaims. Appellant's brief at 11.

The FTCA waives sovereign immunity for tort claims against the United States.

*F.D.I.C. v. F.S.S.S.* 829 F.Supp. at 321. The Act is generally recognized as applicable to claims against the F.D.I.C. *Id.* To bring a tort claim against a federal agency, one must comply with all statutory prerequisites, including bringing the claim first before the federal agency. 28 U.S.C. § 2675(a). Furthermore, after a final decision from the federal agency, the complainant must assert any cause of action against the United States rather than the federal agency. 28 U.S.C. § 2679(a).

However, it is also well-established that once the United States brings suit, it waives sovereign immunity to the extent that the defendants may have a compulsory counterclaim. *F.D.I.C. v. F.S.S.S.*, 829 F.Supp. at 321–22. Furthermore, a defendant asserting a compulsory counterclaim against the F.D.I.C. need not sue the United States instead of the federal agency, as otherwise required under 28 U.S.C. § 2679(a). *F.D.I.C. v. F.S.S.S.*, 829 F.Supp. at 322, n. 10. A claim is compulsory if it is one which "at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R.Civ.P. 13(a).

Furthermore, both case law and federal statute protect the F.D.I.C. when it seeks to recover on an asset acquired from a failed bank. *F.D.I.C. v. Newhart*, 892 F.2d 47, 49 (8th Cir.1989). Specifically, the F.D.I.C. is protected from assertions by obligors that the latter had an oral agreement with the failed bank. *E.I. du Pont de Nemours & Co. v. F.D.I.C.*, 32 F.3d 592, 596 (D.C.Cir.1994).[4] Moreover, this protection

---

4. The so-called *D'Oench* doctrine stated that it is not permissible to assert an unwritten, secret agreement with the bank when defending against subsequent collection efforts by the F.D.I.C. *D'Oench, Duhme & Co. v. F.D.I.C.*, 315 U.S. 447, 460, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The subsequent codification of this doctrine, 12 U.S.C. § 1823(e), provides in relevant part that:
    No agreement which tends to diminish or defeat the interest of the [F.D.I.C.] in any asset acquired by it under this section ... either as

security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [F.D.I.C.] unless such agreement—
    (1) is in writing,
    (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor contemporaneously with the acquisition of the asset by the depository institution,

extends to third parties to whom the F.D.I.C. may transfer a note. *F.D.I.C. v. Newhart,* 892 F.2d at 50. However, the application of both the *D'Oench* doctrine and 12 U.S.C. § 1823(e) has been limited by *Howell v. Continental Credit Corp.,* 655 F.2d 743 (7th Cir. 1981) and its progeny. In *Howell,* an action was brought by a lessee of broadcasting equipment concerning the validity of the leases in question, and the F.D.I.C. intervened and counterclaimed against the lessee, claiming protection from suit under the *D'Oench* doctrine and 12 U.S.C. § 1823(e). The Seventh Circuit reversed the district court's grant of summary judgment, finding that, where the lease agreement upon which the F.D.I.C. sought recovery "facially manifest[ed] bilateral obligations," the protections of the *D'Oench* doctrine and 12 U.S.C. § 1823(e) did not apply. *Howell,* 655 F.2d at 746. The Seventh Circuit distinguished *Howell* from those cases where the F.D.I.C. should be protected from assertions of unrecorded agreements. *Id.*

■ In this case, the Miners' counterclaim involves the existence of a floor plan which was allegedly part of the same transaction, the April 1988 note, which is the subject of Diversified's claim. It has not been demonstrated that the counterclaim requires for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. Thus, we find that, particularly in the context of summary judgment, we must construe the facts most favorably to the non-movant and deem the Miners' counterclaim to be compulsory. In these circumstances, the Miners were not required to sue the United States rather than the agency. *See F.D.I.C. v. Carter,* 701 F.Supp. 730, 733 (C.D.Cal.1987). It also follows that Diversified is not immune under the FTCA from the Miners' compulsory counterclaim.

■ Secondly, we believe that *Howell* applies to the April 1988 loan. On its face, the loan agreement refers to a document which is missing from the record and which, if it is indeed the floor plan, manifests bilateral obli-

gations. The existence of the written document and the allegation that the F.D.I.C. and Diversified refused to comply with the terms of the floor plan agreement both suggest that the traditional protections of the *D'Oench* doctrine and of 12 U.S.C. § 1823(e) do not apply to this case. Therefore, we find that the trial court did not err in denying summary judgment to Diversified regarding the Miners' counterclaim based upon the April 1988 loan.

■ However, the record does not reveal any suggestion of a written agreement linking the floor plan to the February 1988 loan, but rather, at best, an oral agreement between the bank and the Miners recognizing that this loan could be paid back only through income from the sale of antique cars. Though not illegal or fraudulent, this is precisely the sort of oral agreement which 12 U.S.C. § 1823(e) was meant to protect against. Thus, we find that the trial court erred in denying summary judgment to Diversified regarding the Miners' counterclaim based upon the February 1988 loan.

### C. Other Arguments for Summary Judgment

Diversified also argues that the Miners' counterclaim sounds in tort, yet the Miners have not demonstrated that Diversified had a duty toward the Miners. Furthermore, Diversified argues that the contract represented by the note was clear and unambiguous as a matter of law, and that the Miners were in breach of contract under its terms. Finally, Diversified asserts that the trial court could find no genuine issue of material fact regarding interpretation of the contract represented by the notes.

Because we have found that there is a genuine issue of material fact regarding the interpretation of the April 1988 promissory note, and an incomplete record before us, we cannot agree that the arguments above establish Diversified's claim to summary judgment regarding the April 1988 loan. Wheth-

---

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been continuously, from the time of its execution, an official record of the depository institution.

er or not Diversified owed any duty to the Miners under that promissory note, or whether there was a valid reason for the Miners' discontinuing payment on the loan, can only be established by understanding whether the floor plan was related to the promissory note in question. The record instead offers us conflicting views of the note. We conclude that Diversified's arguments here are not sufficient to grant summary judgment with regard to the April 1988 note.

## CONCLUSION

In conclusion, we find that there are genuine issues of material fact regarding the primary collateral for the April 1988 note, and whether, if the collateral is a floor plan, the F.D.I.C. and Diversified caused the Miners' failure to perform by withholding the car titles. We further conclude that the Miners have brought a compulsory counterclaim and that Diversified does not enjoy immunity from such counterclaims under the FTCA. In addition, the Miners assert a counterclaim, regarding the April 1988 note, which does not depend on a secret, unrecorded agreement from which the F.D.I.C. and its successors in interest would enjoy protection. Instead, the counterclaim depends upon a written record, part of which is not available to us. For all of the above reasons, the trial court did not err in denying summary judgment to Diversified regarding the April 1988 loan. However, because the Miners themselves assert that an unwritten agreement was involved, the trial court erred in denying summary judgment regarding the February 1988 loan.

Judgment affirmed in part and reversed in part.

RUCKER, J., and BROOK, J., concur.