**Paul J. HART and Linda K. Hart,**
**Appellants–Plaintiffs,**

v.

**STEEL PRODUCTS, INC., Katherine M.**
**Scales, and Alvah Rochon, Appellees–**
**Defendants and Cross–Appellants.**

No. 49A04–9507–CV–249.

Court of Appeals of Indiana.

June 28, 1996.

Rehearing Denied Aug. 22, 1996.

Jay McShurley, Somerset, Kentucky, for appellants.

Terry R. Curry, Butler, Hahn, Little & Hill, Indianapolis, and James P. Quinn, Indianapolis, for appellees.

## OPINION

CHEZEM, Judge.

### Case Summary

Appellants/Plaintiffs, Paul and Linda Hart ("Harts"), appeal the trial court's judgment in their fraud action against Cross-appellants/Defendants, Steel Products, Inc. ("Steel Products"), Katherine M. Scales ("Scales"), and Alvah Rochon ("Rochon") (collectively, "Defendants"). We affirm in part, and reverse and remand in part.

### Issues

We restate the issues presented by the parties as follows:

I. Whether there was sufficient evidence that Paul reasonably relied upon Steel Products' 1990 tax return;

II. Whether the contract was properly ordered rescinded;

III. Whether the trial court erred in piercing Steel Products' corporate veil; and,

IV. Whether Harts were entitled to punitive damages.

### Facts and Procedural History

This action arose out of the sale of the assets of a steel manufacturing business located in Windfall, Indiana.

In 1990, Paul Hart decided to change careers. Paul was a veterinarian by trade who had maintained a solo practice for seventeen years. In May of 1990, Paul sold his practice and moved with his family to Indiana. Paul then began to look for a business to purchase. During a six-month period, Paul reviewed information he received from various business brokers, relating to businesses for sale such as a lumber yard, jewelry store, metal recycling plant, an unfinished furniture store, and a leather manufacturing plant.

In January of 1991, Paul received information regarding Steel Products, Inc. Katherine Scales was the sole shareholder of Steel Products and uninvolved in its daily operations. Alvah Rochon was its general manager. Paul made an offer to purchase the assets of Steel Products contingent on his satisfactory review of the financial statements and books of the company. After receiving the offer, Rochon provided Paul with balance sheets, income statements, and federal income tax returns for the years 1987, 1988, and 1989. Steel Products' 1987 income tax return showed an ordinary loss of $14,963.45. Steel Products' 1988 income tax return showed ordinary income of $20,581.29. Steel Products' 1989 income tax return showed an ordinary loss of $50,666.43. Paul's initial offer expired under its own terms.

Sometime before April 11, 1991, Paul and Rochon went to the office of Dell Henderson, Steel Products' accountant. Rochon authorized Henderson to release the 1990 financial information to Paul. Steel Products' 1990 financial statements and income tax return showed ordinary income for 1990 of $176,301.94. Paul was not given a copy of the 1990 federal tax return. On April 11, 1991, Paul made another offer to purchase the assets of Steel Products. This offer was accepted and the deal was closed on May 1, 1991. Paul formed Hart Steel, Inc. to hold the assets purchased.

In April of 1993, Paul contacted Henderson to retrieve some information from the 1990 federal income tax return. Henderson asked if he wanted information from the original return or the amended return. Upon learning of the amended return, Paul went to Scales' house and obtained a copy of it. The amended return showed that for 1990, Steel Products had a loss of $4,344.76.

On April 21, 1993, Harts filed suit against Scales, Rochon, and Steel Products. Harts alleged that the Defendants committed fraud by representing that Steel Products had 1990 ordinary income of $176,301.94 when they knew Steel Products had actually sustained a loss in 1990 of $4,344.76. Harts alleged that they would have paid substantially less for

Steel Products had they been provided with the correct financial information. Harts sought reformation of the contract to reflect a reduced purchase price, and also sought an award of punitive damages. Defendants counterclaimed, alleging that Harts had failed to pay on the notes they had made in purchasing the assets of Steel Products.

A bench trial was conducted on February 17 and 18, 1995. On April 20, 1995, the trial court entered findings of fact and conclusions of law. A judgment of $215,114.56 was entered in favor of Harts and against Scales; the contract for the sale of Steel Products' assets was ordered rescinded.

### Discussion and Decision

### Standard of Review

 In this case, the trial court entered specific findings, although neither Harts nor Defendants requested it to do so. In such a case, the specific findings will control as to only those issues which they cover, and a general judgment will control as to the issues upon which the court has not expressly found. *In re Marriage of Loeb,* 614 N.E.2d 954 (Ind.Ct.App.1993).

 Specific findings will be reversed on appeal only if they are clearly erroneous, while a general judgment will be affirmed upon any legal theory supported by the evidence. *Id.; Quebe v. Davis,* 586 N.E.2d 914 (Ind.Ct.App.1992). Special findings entered in favor of the party bearing the burden of proof are clearly erroneous when there is no substantial evidence of probative value to support the findings, or even if there is supporting evidence, we are left with a definite and firm conviction that a mistake has been made. *Matter of E.M.,* 581 N.E.2d 948 (Ind. Ct.App.1991), *trans. denied.* Whichever standard of review is employed, we will neither reweigh the evidence nor judge the credibility of the witnesses, but consider only that evidence most favorable to the prevailing party and all reasonable inferences which can be drawn from that evidence. *Marriage of Loeb,* 614 N.E.2d at 956; *Quebe,* 586 N.E.2d at 917.

### I.

Defendants contend there was insufficient evidence to prove they committed fraud. Defendants specifically argue there was a lack of evidence that Paul reasonably relied on the original 1990 federal tax return, which showed that Steel Products had a profit of $176,301.94.

 When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Bob Schwartz Ford, Inc. v. Dunham,* 631 N.E.2d 953 (Ind.Ct.App.1994). Even though the evidence may conflict, if there is substantial evidence to support the judgment it will be affirmed. *Howard v. Trevino,* 613 N.E.2d 847 (Ind.Ct.App.1993). We will reverse only when there is an absolute failure of proof on some issue necessary to sustain the judgment. *Id.* In order to establish actual fraud, the plaintiff must prove: (1) a material misrepresentation of past or existing fact, (2) made with knowledge or reckless disregard of its falsity, (3) which caused reliance to the detriment of the person relying upon it. *Biberstine v. New York Blower, Co.,* 625 N.E.2d 1308 (Ind.Ct.App.1993), *reh denied, joint dismissal of transfer granted.*

 Defendants contend Harts did not sufficiently prove that Paul reasonably relied upon the 1990 original federal tax return in making his offer to purchase. Defendants point to Paul's testimony in which he stated he could not remember the exact date on which he and Rochon viewed the return at Dell Henderson's office.

However, there was sufficient evidence from which the trier of fact could find that Paul did in fact view the return before April 11, 1991. On cross-examination, Paul testified that he believed he reviewed the 1990 tax return sometime between March 14 and March 18, 1991, although he could not remember the exact date. Paul testified that he believed this was so because on an intermediate offer made on March 18, he had removed his contingency of a satisfactory review of the financial books. Paul testified that he would only have removed the contingency after he had actually reviewed the 1990 financial information. Thus, the evi-

dence was sufficient to support a finding that Paul had reviewed the 1990 tax return before he made the April 11, 1991 offer.

## II.

■ Defendants contend the trial court erred in ordering the contract rescinded. Fraud in the inducement of a contract is a basis for rescission. *Indiana & Michigan Elec. Co. v. Harlan,* 504 N.E.2d 301 (Ind.Ct. App.1987), *reh. denied. trans. denied.* A party bringing an action for fraud has an election between two remedies. He may affirm the contract, retain the benefits, and seek damages; or he may rescind the contract, return any benefits received, and be returned to the status quo. *Id.* If he elects to rescind the contract, he may not recover general damages, but is only entitled to be returned to the status quo, which usually necessitates a return of money or other things received or paid under the contract, plus reimbursement as special damages, for any reasonable expenditures incurred as a proximate result of the fraudulent conduct. *Id.* The rescinding party must also restore all benefits received under the contract. *Id.*

■ A plaintiff seeking to rescind a contract bears the burden of proving his right to rescission, and that he is able to return in specie any property received under the contract, or its reasonable value if a return in specie is impossible. *Grissom v. Moran,* 154 Ind.App. 419, 292 N.E.2d 627 (1973). Applications for rescission are addressed to the sound discretion of the trial court. *Kruse, Kruse & Miklosko v. Beedy,* 170 Ind.App. 373, 353 N.E.2d 514 (1976). A party appealing from the trial court's grant of rescission has the burden of showing that the trial court's decision was erroneous.

Defendants argue that rescission was inappropriate in this case because the parties could not be returned to the status quo. The parties contracted for the sale of the assets of Steel Products for $292,500.00. The price was composed as follows:

| | |
|---|---|
| $ 20,000.00 | Cash paid to broker |
| 100,000.00 | Assumption of existing accounts payable |
| 22,500.00 | Assumption of existing obligations on equipment |
| 150,000.00 | Note payable to Scales |
| $292,500.00 | Total |

As the contract was ordered rescinded, Harts were entitled to a return of their consideration actually paid. The trial court awarded Harts $215,114.56.[1] This sum was made up of the $100,000.00 in accounts payables that Harts had assumed, and $115,114.56 in additional capital contributions ($80,114.56 made by Harts and $35,000.00 made by another investor) paid into the business after Harts had purchased it.

Defendants argue the $115,114.56 in additional capital contributions cannot properly be characterized as consideration paid for the business because they are actually equity investments in the business. However, the fact that additional equity was invested in the business does not make those contributions not recoverable. Harts purchased the assets of Steel Products. Those assets included land, buildings and equipment, accounts receivable, inventory, goodwill, etc. Out of the revenues generated by these assets, Hart Steel had to pay its operating expenses. As Harts soon discovered after closing the deal, however, there was an insufficient revenue stream to cover the operating expenses. This necessitated that Harts pay Hart Steel's creditors out of their own pockets.

The additional capital contributions had the effect of keeping the value of Hart Steels' assets at a level that they would not have been, but for the payments by Harts. As the contract was rescinded, this increased value of the assets (because Hart's paid company bills personally and not out of company revenues) is being transferred back to Steel Products. As such, Defendants should pay Harts for the amount of their payments,

---

**1.** At trial, Harts introduced an exhibit listing the monies they sought returned. The exhibit included $47,115.28 paid to Scales on the $150,-000 note. Linda Hart testified that all payments to Scales on the note were made out of the assets of the business.

However, the debt to Scales was not a debt of the business, but a debt of Harts. In reality, the payments to Scales out of the business assets were in substance either a dividend or a capital distribution by the company to Harts, who then in turn paid Scales. As such, the trial court correctly excluded this amount as a part of the consideration paid by Harts to Scales.

because it is those payments which caused the assets to have a greater value than they otherwise would have had.

In a related argument, Defendants also contend there is no way of knowing whether the additional capital contributions are being held by Hart Steel as retained earnings, which would not be transferred to Steel Products upon rescission of the contract. *See Markham v. Prutsman Mirror Co.*, 565 N.E.2d 385 (Ind.Ct.App.1991) (where one corporation purchases the assets of another, the buyer does not assume the debts and liabilities of the seller). However, even if the funds were held by Hart Steel as retained earnings, there necessarily would be a corresponding increase in Hart Steel's assets (assets = liabilities + stockholders' equity). Thus, contrary to Defendants' contention, the judgment ordering Defendants to pay Harts for their $115,114.56 equity investment does not result in a windfall to plaintiffs; it merely restores the status quo. In fact, if the trial court did not order reimbursement of the equity investment, it would be Defendants who actually would be receiving a windfall because the assets returned to Steel Products would be inflated by the $115.114.56 that Harts personally paid to the company's creditors.

■ Defendants additionally argue the judgment is erroneous because it includes a return of the $100,000.00 in accounts payable assumed by Harts, and that Harts had not in fact paid this entire amount. Defendants are correct. Upon rescission of the contract, a party is entitled only to the return of the consideration actually paid. *Grissom*, 154 Ind.App. at 435, 292 N.E.2d at 629. The evidence adduced at trial was that Harts actually paid only $87,000 of the $100,000 they assumed in accounts payable. We therefore must remand to the trial court to decrease the judgment by $13,000.00.

■ Defendants also argue rescission of the contract was inappropriate because they presented evidence that some of the equipment which made up the sale was no longer in existence. However, return of the actual property is not necessary. *Horine v. Greencastle Production Credit Ass'n*, 505 N.E.2d 802 (Ind.Ct.App.1987). Upon seeking rescission of a contract, a party must return the property received or the reasonable value thereof if return of the property is impossible. *Grissom*, 154 Ind.App. at 435, 292 N.E.2d at 629. Thus, any property that Defendants proved missing can be valued and credited against the consideration actually paid by Harts.

■ At trial, Defendants introduced evidence that a trailer with a 500 gallon gas tank on it was stolen, and that Hart Steel maintained no insurance on the trailer. The result of Harts' failure to maintain insurance on the equipment is that the total assets of the company have been reduced by the fair market value of the trailer. Thus, Defendants are entitled to a credit against the judgment for the fair market value of the trailer.

■ Defendants also argue they are entitled to a credit for a 2½ ton truck no longer owned by Hart Steel. Paul testified that the truck's engine seized up and it was then sold. However, the difference between this instance and the foregoing is that assets have not been reduced by the fair market value of the truck; it is the truck itself which has a lesser fair market value. Hart Steel received the fair market value of the 2½ ton truck upon its sale. Defendants presented no evidence that the proceeds received from the sale were not deposited into the corporation's accounts. Defendants are not entitled to a credit for the value of the 2½ ton truck.

Lastly, Defendants argue the trial court erred by not entering judgment against Harts on the promissory note payable to Scales, and which was in default. However, as the contract was properly rescinded, the parties are not entitled to any benefits received under the contract, but are only entitled to a return of their consideration actually paid. *Harlan*, 504 N.E.2d at 307. There was no error.

### III.

■ Defendants contend the trial court erred in piercing Steel Products' corporate veil and holding Scales individually liable for return of the consideration paid. A

corporation is a legal entity separate and distinct from its shareholders and officers. *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228 (Ind.1994). As such, corporate officers and shareholders acting on behalf of the corporation are generally not liable for the contractual obligations of the corporation. *Id.* Indiana Courts are reluctant to disregard the corporate entity *Id.* However, the corporate form will be disregarded to prevent fraud or unfairness to a third party. *Id.*

When a court exercises its equitable power to pierce the corporate veil, it engages in a highly fact-sensitive inquiry. *Hinds v. McNair,* 235 Ind. 34, 129 N.E.2d 553 (1955). The burden is on the party seeking to pierce the corporate veil to prove that the corporate form was so ignored, controlled or manipulated that it was merely an instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice. *Aronson v. Price,* 644 N.E.2d 864 (Ind.1994), *reh. denied.* In determining whether a party has met this burden, a court considers whether evidence has been presented showing: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representations by corporate shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form. *Id.*

Here, the trial court found that Rochon, an agent of Steel Products, committed fraud by misrepresenting to Harts that Steel Products had income of $176,301.94 in 1990, when he in fact knew that Steel Products actually incurred a loss of $4,344.76. Had Harts known the true financial position of Steel Products, they would have paid substantially less for the company's assets. Rochon's conduct alone is sufficient to disregard the corporate veil and hold Scales, as the sole shareholder and beneficiary of the asset sale, personally liable for the return of the consideration.

In addition to the finding of fraud, Steel Products was significantly undercapitalized.

The 1990 financial statements which were presented to Harts showed that Steel Products had stockholder's equity of $129,212.36. However, the information on the 1990 amended federal tax return, which was withheld from Harts, showed that Steel Products actually had negative stockholder's equity of $51,434.34. Recognition of the corporate entity by Indiana Courts has been conditioned on the requirement that the corporation be established on an adequate financial basis. *State v. McKinney,* 508 N.E.2d 1319 (Ind.Ct. App.1987), *reh. denied, trans. denied.* The evidence introduced at trial showed that Steel Products was continuously undercapitalized from its inception up throughout the sale to Harts. In 1987, Steel Products had negative stockholder's equity of $32,607.30. In 1988, Steel Products had stockholder's equity of $2,546.19. In 1989, Steel Products had negative stockholder's equity of $46,767.56. To permit Scales to hide behind the corporate form would allow her to retain an amount of consideration paid, based not upon the fair value of the Steel Products' assets but upon fraudulently misstated figures. Such a result would work a manifest injustice. There was no error in piercing Steel Products' corporate veil.

## IV.

Harts contend the trial court erred in failing to award punitive damages. Punitive damages are appropriate only where it is proved by clear and convincing evidence that a party acted with malice, fraud, gross negligence or oppressiveness which was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence or other human failing. *Budget Car Sales v. Stott,* 662 N.E.2d 638 (Ind.1996). When reviewing the denial of an award of punitive damages, we do not reweigh the evidence or judge the credibility of the witnesses. *Watson v. Thibodeau,* 559 N.E.2d 1205 (Ind.Ct.App.1990). Rather, we consider whether a reasonable trier of fact, considering only the probative evidence and reasonable inferences drawn therefrom which support the judgment, could find such damages proved by clear and convincing evidence. *Id.*

Upon a finding of civil fraud, it is within the discretion of the factfinder to

award punitive damages. *Finney v. Relphorde,* 612 N.E.2d 191 (Ind.Ct.App.1993). An award of punitive damages is not mandatory upon a finding of civil fraud. *Id.* The purpose of punitive damages is to punish the wrongdoer and thereby deter others from engaging in similar conduct. *Bright v. Kuehl,* 650 N.E.2d 311 (Ind.Ct.App.1995), *reh. denied, trans. denied.* The public interest must be served by the imposition of punitive damages. *Breeck v. City of Madison,* 592 N.E.2d 700 (Ind.Ct.App.1992), *trans. denied.*

Where the factfinder fails to make an award of punitive damages, that decision is subject to review only upon a clear showing of abuse of discretion. *Continental Casualty Co. v. Novy,* 437 N.E.2d 1338 (Ind.Ct. App.1982). Here, although the finding of fraud could support an award of punitive damages, there are no findings concerning the relevant factors of whether an award of punitive damages would deter others from engaging in similar conduct, or whether such an award would serve the public interest. Generally, when the trial court's findings of fact do not cover all the issues, remand is appropriate for the entry of specific findings on the omitted issues. However, in this case the trial court entered findings of fact and conclusions of law upon its own motion. When a trial court does so, the specific findings will control as to only those issues which they cover, and a general judgment will control as to the issues upon which the court has not expressly found. *In re Marriage of Loeb,* 614 N.E.2d 954 (Ind.Ct.App.1993). Applying this standard of review, we must presume that the trial court considered the relevant factors surrounding an award of punitive damages and found that the weight of the evidence did not support an award of such damages. The trial court did not abuse its discretion in failing to award punitive damages.

Affirmed in part, reversed and remanded in part.

DARDEN and HOFFMAN, JJ., concur.