**A.J.'S AUTOMOTIVE SALES, INC., and Diane Newman, Appellants–Defendants,**

v.

**Donna L. FREET and Samuel H. Freet, Appellees–Plaintiffs.**

No. 71A03–9909–CV–343.

Court of Appeals of Indiana.

March 29, 2000.

Rehearing Denied May 25, 2000.

956

Timothy J. Abeska, Brien P. Crotty, Roemer & Mintz, LLP, South Bend, Indiana, Attorneys for Appellant.

Stephen G. Drendall, South Bend, Indiana, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge

Diane Newman sold her Chevrolet Suburban to A.J.'s Automotive Sales, Inc. (hereinafter referred to as "A.J.'s"). Donna L. and Samuel H. Freet purchased the vehicle from A.J.'s several weeks later. The Freets later filed a complaint for damages against Newman and A.J.'s, alleging that the vehicle's odometer reading had been falsified. A.J.'s appeals from the subsequent denial of its motion for summary judgment, and from the partial grant of summary judgment in favor of the Freets, and Newman appeals the denial of her motion for summary judgment. Newman presents the following restated issues for review:

1. Did the trial court err in denying Newman's motion for summary judgment with respect to the claim of fraudulent misrepresentation and the claim arising under the Odometer Act?

2. Did the trial court err in denying Newman's motion for summary judgment with respect to the claim arising under Indiana's Deceptive Sales Act?

A.J.'s presents the following restated issues for review:

3. Was the Freets' action against A.J.'s barred by the statute of limitations?

4. Was A.J.'s entitled to summary judgment on the basis of provisions in the sales contract that the vehicle was sold "as is" and explicitly disclaimed responsibility for representations regarding the number of miles the vehicle had been driven?

5. Did the trial court err in rescinding the sale of the Suburban from A.J.'s to the Freets?

6. May the Freets recover damages if rescission of the contract is upheld?

We affirm in part, reverse in part, and remand with instructions.

The facts most favorable to the nonmovants are that on December 16, 1994, Newman purchased a 1984 Suburban from Preferred Automobiles, Inc. (Preferred) for $3,360. When Newman purchased the vehicle, the odometer read 80,788 miles. On January 9, 1995, Preferred completed, signed, and mailed to Newman an Odometer Disclosure Statement, which stated, in pertinent part, as follows:

I, /s/ Preferred Automobiles, Inc. state that the odometer (of the vehicle

(transferor's name—PRINT)

described below) now reads 80,788 (no tenths) miles and to the best of my

knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked

☒(1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage *in excess of its mechanical limits.*

*Record* at 40 (emphasis supplied). The import of the above document was the disclosure that the Suburban actually had been driven for 180,788 miles, not 80,788. In applying for title to the Suburban, on January 10, 1995, Newman mailed the aforementioned Odometer Disclosure Statement and other necessary paperwork to the Indiana Bureau of Motor Vehicles (BMV). In processing the application and completing the new certificate of title, the BMV mistakenly indicated on the title that the mileage reading on the Suburban's odometer reflected actual miles driven, rather than miles driven in excess of the mechanical limits.[1]

On April 19, 1995, Newman sold the Suburban to A.J.'s for $3,800. A.J.'s paid the indicated amount to Newman by check on that date. At the time of sale, Newman provided A.J.'s with an undated, signed Indiana Certificate of Title for the Suburban. In the section to be completed by the seller, the following statement appeared: "I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked." *Record* at 38. Newman indicated that the odometer reading was 84,899. Located next to the line where Newman recorded the odometer reading were two statements, with a box next to each statement. Those statements read as follows: "1. The odometer reading stated is in excess of its mechanical limits. 2. The odometer reading is not the actual

mileage. WARNING—ODOMETER DISCREPANCY." Record at 38. Newman did not check either box. At some point in time, Newman informed A.J.'s that the Suburban had been driven more miles than was reflected on the odometer.[2] The record does not clarify when she did so.

On May 2, 1995, the Freets purchased the Suburban from A.J.'s for $5,995. At the time of purchase, Donna Freets signed a bill of sale that identified A.J.'s as the seller, and that included the following statement: "Regardless of the mileage appearing on the speedometer the seller makes no warranty or representation as to the extent of [sic] the motor vehicle has been driven." *Supplemental Record* at 31. A.J.'s completed and signed an Odometer Disclosure Statement, indicating that the odometer on the Suburban read 84,899 at the time of sale, and "to the best of [its] knowledge, that it reflect[ed] the actual mileage of" the Suburban. A.J.'s failed to check boxes indicating that either (1) the mileage listed was in excess of the vehicle's mechanical limits, or (2) the odometer reading did not reflect the vehicle's actual mileage. The Freets thereafter took possession of the Suburban.

The Freets soon began to experience mechanical problems with the Suburban. As a result, the Freets requested a title history from the BMV and discovered that the vehicle had 100,000 more miles on it than was indicated in the Odometer Disclosure Statement that A.J.'s had provided to them. The Freets filed suit against Newman on October 4, 1996, alleging that she had materially misrepresented the Suburban's true mileage, and that she had done so with the intent to defraud or mislead them. The Freets claimed that New-

---

1. It is clear that, in this context, "mechanical limit" means the maximum number of miles that a vehicle's odometer will reflect. For instance, if an odometer "rolls over," *i.e.,* starts again at "0", after reaching 99,999.9 miles, the vehicle's mechanical limit is 99,-999.9 miles.

2. In answering interrogatories submitted to her by the Freets, Newman denied the following assertion: "At no time before May 3, 1995, did you [Newman] inform any agent of A.J.'s the Suburban had mileage over 100,000 miles." *Record* at 32.

man was liable under the Motor Vehicle Information and Cost Savings Act (the Odometer Act), codified at 49 U.S.C. § 32701, *et seq.*, and the Indiana Deceptive Consumer Sales Act (the Deceptive Sales Act), codified at Ind.Code Ann. § 24–5–0.5–1 through –11 (West 1995 & Supp. 1999). The Freets sought (1) actual, consequential, and punitive damages under the theory of fraudulent misrepresentation, (2) treble damages, attorney fees, and costs under both the Odometer Act and the Deceptive Sales Act, and (3) rescission of the sales contract executed by the Freets and A.J.'s and refund of all funds expended by the Freets in connection with their purchase and ownership of the Suburban.

On May 5, 1997, the Freets filed a petition seeking permission to amend the complaint, for the purpose of adding A.J.'s as a party defendant. Following a May 8, 1997 hearing on the Freets' motion to amend, and by agreement of the parties, the motion was granted, effective May 8, 1997. The amended complaint added A.J.'s as a defendant, and reiterated the same theories against A.J.'s as were asserted against Newman in the original complaint. A.J.'s, Newman, and the Freets all filed separate motions for summary judgment. Following a July 5, 1999 hearing, the trial court granted in part the Freets' summary judgment motion. The trial court issued an order (1) rescinding the sales contract, (2) directing the Freets to return the Suburban to A.J.'s, and (3) requiring A.J.'s to pay $3,724 for the Suburban and $3,240 for legal costs to the Freets. The trial court denied the summary judgment motions filed by A.J.'s and Newman.

The Freets thereafter filed a motion to correct error, claiming that the damages awarded by the trial court were inadequate, in that the total costs associated with their purchase of the Suburban amounted to $6,224.75, not 3,274. The trial court agreed and amended the award by ordering A.J.'s to pay $6,224.75 and $3,240 to the Freets.

**1.**

Newman contends that the trial court erred in denying her motion for summary judgment.

When reviewing the denial of a motion for summary judgment, we employ the same standard as did the trial court. *Diversified Financial Systems, Inc. v. Miner,* 713 N.E.2d 293 (Ind.Ct.App.1999). Summary judgment should be entered only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We consider only those matters that were designated at the summary judgment stage of the proceedings. *Diversified Financial Systems, Inc. v. Miner,* 713 N.E.2d 293. We carefully scrutinize the pleadings and designated materials, and construe them in a light most favorable to the nonmovant. *Id.* Finally, a trial court's decision on a motion for summary judgment is clothed with a presumption of validity. *Id.*

■ Newman claims that she was entitled to summary judgment on the Freets' claim arising under the Odometer Act. In support of this claim, Newman notes that the version of the act that was in effect at the time of the sale did not require disclosure of the odometer reading in sales involving vehicles that were more than ten years old. Newman cites *Speedway Int'l Trucks, Inc. v. Rosselle,* 648 N.E.2d 1161 (Ind.1995) as authority for the proposition that a party cannot incur liability for failing to provide an odometer statement under the earlier version of the act when that version did not require disclosure. We agree with Newman's assertion regarding the meaning of *Speedway Int'l Trucks, Inc. v. Rosselle,* but conclude that the principle is inapplicable here.

■ In *Speedway Int'l Trucks, Inc. v. Rosselle,* the defendant/seller sold a semi-tractor weighing in excess of 16,000 pounds to the buyer, but failed to provide the buyer with an odometer disclosure

statement. Subsequent to the sale of the semi-tractor, the applicable regulations were amended and the exception to the odometer disclosure statement requirement for vehicles based on weight was abolished. The buyer filed suit, claiming that the seller was liable because it did not provide an odometer disclosure statement. Our supreme court disagreed, concluding that the seller was not liable because the regulations then in effect did not require the seller to complete an odometer disclosure statement. *Speedway Int'l Trucks, Inc. v. Rosselle* therefore stands for the proposition that a seller is not liable for failing to provide an odometer statement at a time when the regulations did not require it. In the instant case, the Freets did not allege that Newman failed to file an odometer disclosure statement. Rather, they allege that she filed a false one. The two propositions are not the same, and therefore *Speedway Int'l Trucks, Inc. v. Rosselle* is inapposite.

In 15 U.S.C. § 1983, Congress directed the Secretary of Transportation to prescribe rules:

> requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:
>
> (1) Disclosure of the cumulative mileage registered on the odometer.
>
> (2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled. Such rules shall prescribe the manner in which information shall be disclosed under this section and in which such information shall be retained.

In response to this mandate, the Secretary promulgated, *inter alia,* the following:

> (c) In connection with the transfer of ownership of a motor vehicle, each transferor shall disclose the mileage to the transferee in writing on the title or, except as noted below, on the document being used to reassign the title.

> \* \* \* \* \*
>
> (e) In addition to the information provided under paragraphs (c) and (d) of this section,
>
> (1) The transferor shall certify that to the best of his knowledge the odometer reading reflects the actual mileage; or
>
> (2) If the transferor knows that the odometer reading reflects the amount of mileage in excess of the designed mechanical odometer limit, he shall include a statement to that effect; or
>
> (3) If the transferor knows that the odometer reading differs from the mileage and that the difference is greater than that caused by odometer calibration error, he shall include a statement that the odometer reading does not reflect the actual mileage, and should not be relied upon. This statement shall also include a warning notice to alert the transferee that a discrepancy exists between the odometer reading and the actual mileage.

49 C.F.R. § 580.5(c) and (e)(1)–(3).

▬ Newman claims that she is not liable under the foregoing provisions because she did not participate in the sale of the Suburban to the Freets and thus was not a "transferor" of the Suburban within the meaning of the Odometer Act. 49 C.F.R. § 580.3 defines "transferor" as "*any person* who transfers his ownership of a motor vehicle by sale, gift, or any means other than by the creation of a security interest[.]" (Emphasis supplied.) Federal courts interpreting the Odometer Act have determined that the language employed in 49 C.F.R. § 580.3 "indicates an intent to extend liability to all violators of the law, rather than to limit liability to the immediate seller of the vehicle." *Alley v. Chrysler Credit Corp.,* 767 F.2d 138, 142 (5th Cir.1985). This conclusion is supported not only by the language of the statute, but by the following public policy consideration as well:

That the statute contemplates liability on [a previous seller], as well as [the immediate seller], in such circumstances arises from the fact that a transferee who obtains a false odometer certificate from another can use it, as [the immediate seller] usually did when someone complained that actual mileage must be larger than that shown on the odometer, as a basis for telling the customer that he only knows that his transferor certified the low mileage to him. That would tend to discourage the purchaser from backtracking to find someone who could be liable. To eliminate that buffer, liability is placed on each transferor who makes no certification or a false certification knowingly.

*Duval v. Midwest Auto City, Inc.,* 425 F.Supp. 1381, 1387 (D.Neb.1977), *aff'd,* 578 F.2d 721 (8th Cir.1978). As a previous transferor, Newman is not immune from liability. *Id.*

■ Newman correctly points out that liability under the Odometer Act arises only upon a showing that the transferor who provided a false odometer disclosure statement did so knowingly and with the intent to defraud. *See* 49 U.S.C. § 32710(a). Newman contends that she is entitled to summary judgment on the allegation that she violated the Odometer Act because the "uncontroverted" evidence "establishes" that the erroneous odometer reading on the title was the result of a clerical error on the BMV's part, and not a misrepresentation made by Newman. Appellant's Brief at 23.

■ To the contrary, the Suburban's certificate of title that Newman filled out when she sold the vehicle to A.J.'s reflects that she recorded the mileage reflected on the odometer, but did not check the box indicating that the figure so recorded represented mileage in excess of the vehicle's mechanical limits. When Newman bought the vehicle, she signed the title completed by Preferred reflecting that the odometer reflected mileage above mechanical limits. Such is sufficient to create questions of

fact concerning Newman's intent and motivation when she incorrectly filled out that portion of the certificate of title when she sold the vehicle to A.J.'s. These questions of fact are material to the resolution of the Freets' claim that arises under the Odometer Act, as well as the separate theory of recovery contained in the Freets' complaint that is based upon an allegation of fraudulent misrepresentation. Therefore, the trial court did not err in denying Newman's motion with respect to the Freets' claim that arises under the Odometer Act, and with respect to the allegation of fraudulent misrepresentation.

### 2.

■ Newman contends that she is not a "supplier" within the meaning of the Deceptive Sales Act, and thus is not subject to liability for claims arising under its provisions. Therefore, she contends that the trial court erred in denying her motion for summary judgment with respect to the claims arising under the Deceptive Sales Act.

The Deceptive Sales Act clarifies that its purpose is to "protect consumers from suppliers who commit deceptive and unconscionable sales acts[.]" IC § 24–5–0.5–1(b)(2). The Act defines "supplier" as follows:

(A) a seller, lessor, assignor, or other person who regularly engages in or solicits consumer transactions, including a manufacturer, wholesaler, or retailer, whether or not he deals directly with the consumer; or

(B) a person who contrives, prepares, sets up, operates, publicizes by means of advertisements, or promotes a pyramid promotional scheme.

IC § 24–5–0.5–2(a)(3). There is no evidence of record to indicate that, for purposes of this case, Newman is anything other than a private individual who sold her car to another party. Is such a person a "supplier" within the meaning of the Deceptive Sales Act?

When a statute is clear and unambiguous on its face, we may not interpret that statute. *Campbell v. State*, 716 N.E.2d 577 (Ind.Ct.App.1999) (opinion on denial of rehearing). "A clear and unambiguous statute is not the subject of judicial construction, and must be held to mean what it plainly expresses. Such a statute must be given its apparent or obvious meaning." *Id.* at 579 (citations omitted).

The Freets offer no argument on appeal that Newman is a "supplier" within the meaning of the Deceptive Sales Act. For our part, we cannot conceive of a reasonable interpretation of the statute that would define "supplier" as including a private individual completing a one-time sale of his or her private automobile. We conclude that Newman is not subject to liability under the Deceptive Sales Act and therefore is entitled to summary judgment on claims arising under that Act.

### 3.

A.J.'s sold the Suburban to the Freets on May 3, 1995. The Freets added A.J.'s as a party defendant in their amended complaint on May 8, 1997. A.J.'s contends that the Freets' action against A.J.'s was barred by the two-year statutes of limitations contained in the Odometer Act and the Deceptive Sales Act, respectively. We address those arguments in turn.

We need not dwell long on A.J.'s statute-of-limitations contention with respect to the claim arising under the Odometer Act. Federal courts have determined that because actions arising under the Odometer Act involve allegations of fraud, courts will employ the federal "discovery rule." *See Carrasco v. Fiore Enters.*, 985 F.Supp. 931 (D.Ariz.1997). The discovery rule provides that "a cause of action sounding in fraud accrues either on the date a plaintiff discovers the fraud or on the date that plaintiff could have, in the exercise of reasonable diligence discovered the fraud." *Id.* at 936. The party that seeks the benefit of the discovery rule bears the burden of proving that the circumstances warrant its application. *Id.*

The Freets purchased the Suburban on May 3, 1995. Thereafter, they were compelled to obtain several major repairs on the vehicle. At some point, a mechanic informed them that he believed the vehicle had been driven in excess of 100,000 miles. As a result, the Freets requested a title history for the Suburban from the BMV to ascertain whether the mileage reflected on the odometer was accurate. It was then that the Freets discovered that the vehicle's odometer had "rolled over," or began again at "0" after going 100,000 miles. The record does not pinpoint the precise date that the Freets became aware of the excessive mileage. However, on August 29, 1996, the Freets' attorney sent a letter to Newman informing her that they had discovered the excessive mileage as a result of the title history. It is reasonable to assume that the August 29 letter to Newman was written shortly after the Freets discovered the problem.

The amended complaint was effective on May 8, 1997. Therefore, to be untimely under the discovery rule, the Freets must have become aware of the problem before, at the latest, May 8, 1995, which was only five days after they purchased the Suburban. In view of the facts that (1) the Freets discovered the problem only after series of major repairs, and (2) Newman was not apprised of the problem until early August of 1996, we are satisfied that the record supports the conclusion that the Freets discovered the mileage discrepancy after May 8, 1995. Therefore, the Freets satisfied their burden of demonstrating that they were entitled to the benefits of the discovery rule and their action against A.J.'s was timely with respect to claims arising under the Odometer Act.

IC § 24–5–0.5–5(b) of the Deceptive Sales Act provides: "Any action brought under this chapter may not be brought more than two (2) years after the occurrence of the deceptive act." Because

the Deceptive Sales Act has an occurrence statute of limitation, rather than a discovery statute of limitation, the statutory period commences to run at the occurrence of the deceptive act. In the instant case, the allegedly deceptive act occurred on May 3, 1995, when A.J.'s sold the Suburban to the Freets. Therefore, the two-year period of limitation under the Deceptive Practices Act expired on May 3, 1997. However, in 1997, May 3 fell on a Saturday. Accordingly, the period was extended to Monday, May 5, 1997. Ind. Trial Rule 6(A)(2) and (4).

 On May 5, 1997, the Freets filed a motion to amend their complaint. On May 8, 1997, the trial court conducted a hearing on the motion to amend. A May 8, 1997 entry in the Chronological Summary of Filings and Proceedings states: "By agreement of parties, motion to amend complaint is granted effect this date." *Record* at 4. Because A.J.'s was added as a party defendant pursuant to the amended complaint after the limitation period expired, the complaint was time-barred unless the amendment related back to the original filing date, or unless the filing of the amendment within the statutory period tolled the statute until the court ruled upon the motion.

Ind. Trial Rule 15(C) states:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment:

(1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and

(2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.

 According to T.R. 15(C), after the statute of limitations has run, a plaintiff may add an entirely new defendant only after demonstrating that conditions of the rule governing relation back of amendments have been satisfied. *Hupp v. Hill,* 576 N.E.2d 1320 (Ind.Ct.App.1991). The party seeking to add an entirely new party bears the burden of proving the criteria set out in T.R. 15(C). Therefore, the Freets could add A.J.'s as a defendant by an amended complaint effective after May 5 by proving that A.J.'s had, on or before May 5, 1997, received notice of the institution of the action and, but for a mistake, A.J.'s knew or should have known that the action would have been brought against A.J.'s.

The Freets have not carried their burden in this respect because the facts of record do not support the claim that A.J.'s received notice of the institution of the Freets' action before the statute of limitations period expired. The record reflects that, prior to May 5, all contact relative to the legal action instituted by the Freets was between the Freets and Newman. On May 5, the Freets filed their motion to amend and their amended complaint. There is no evidence that A.J.'s was apprised or otherwise became aware of this action on or before May 5. We are aware that the attorney who had represented Newman throughout the lawsuit entered an appearance for A.J.'s on May 8. However, there is no indication that Newman's attorney contacted A.J.'s in that regard on or before May 5. Although it is theoretically possible that A.J.'s knew by May 5 that the Freets had instituted an action in which A.J.'s should have been named as a defendant, we will not speculate on this point. Thus, on the record before us, we cannot say that A.J.'s knew of the Freets' action by May 5. Inasmuch as the Freets had the burden of proof on this question,

we must conclude that they have failed to demonstrate that A.J.'s knew of the Freets' action before the statute of limitations expired.

■ Alternatively, the addition of A.J.'s as a party defendant would be timely if the limitations's period was tolled by the filing of the Freets' motion to amend their complaint. We find no Indiana case that holds that the filing of a motion to amend a complaint for the purpose of adding a new defendant tolls the running of the statute of limitations until the court rules on the motion. This issue was considered, however, by the Colorado Court of Appeals in *Moore v. Grossman,* 824 P.2d 7 (Colo.Ct.App.1991), *cert. denied.* In that case, the court addressed the aforementioned issue in the context of Rule 15 of the Colorado Rules of Civil Procedure. C.R.C.P. 15 is substantially similar to Indiana's T.R. 15.

The *Moore* court cited with approval the following rule employed by federal courts under the Federal Rules of Civil Procedure and by several other state courts: "[I]f a plaintiff files a motion to amend the complaint, accompanied by an amended complaint, and serves both upon the defendant before the expiration of the statute of limitations, the statute is tolled until the trial court rules on the motion." *Moore v. Grossman,* 824 P.2d at 9. Even if we were inclined to adopt the rule in Indiana, the record does not reflect that the Freets met the requirements for tolling. That is, although the Freets filed both a motion to amend the complaint and the amended complaint before the expiration of the limitations period, there is no indication that the motion and amended complaint were served upon A.J.'s before the limitations period expired. Therefore, the filing of the motion and the amended complaint did not toll the running of the statute of limitations. As a result, we must conclude that the action against A.J.'s was not timely filed with respect to claims arising under the Deceptive Sales Act.

■ We note here that A.J.'s has not challenged the timeliness of the portion of the Freets' complaint that is based upon fraudulent misrepresentation. Of course, such a challenge would be unsuccessful. Ind.Code Ann. § 34–1–2–1 (West 1993) provides for a six-year statute of limitation for causes of action based upon an allegation of fraud. *Shafer v. Lambie,* 667 N.E.2d 226 (Ind.Ct.App.1996). Therefore, the separate allegation in the Freets' complaint that is based upon fraudulent misrepresentation was timely filed with respect to both defendants, and remains viable.

In summary, the trial court correctly denied the summary judgment motion filed by A.J.'s with respect to the claims arising under the Odometer Act and the claim of fraudulent misrepresentation, but erred in denying the motion with respect to claims arising under the Deceptive Sales Act.

4.

■ The sales contract specified that the Suburban was sold "as is". *Supplemental Record of Proceedings* at 40. Further, the following statement appeared at the bottom of the contract: "Regardless of the mileage appearing on the speedometer the seller makes no warranty or representation as to the extent of [sic] the motor vehicle has been used or driven." *Id.* A.J.'s contends that it was entitled to summary judgment because, by virtue of the aforementioned contract provisions, it disclaimed any liability for the accuracy of the mileage reflected on the Suburban's odometer.

■ A.J.'s is correct in observing that Indiana courts generally are committed to advancing the public policy in favor of enforcing contracts, and recognize the importance in not restricting a person's freedom to contract. *See Abbey Villas Dev. Corp. v. Site Contractors, Inc.,* 716 N.E.2d 91 (Ind.Ct.App.1999). However, in passing the Odometer Act, Congress articulated a strong, national public policy in favor of preventing the fraud that occurs when

odometers are set back. It cannot be doubted that the practices of used car dealers in this respect was an area of special concern. The following excerpt from the Supreme Court of Alabama reflects the concern:

> The obvious intent of the law is to prohibit the setting back of odometers. Because auto dealers, such as those involved here, make up such a large portion of the used car market, and because they are generally equipped with the personnel and physical equipment to discover odometer "rollbacks," public policy demands that auto dealers utilize their expertise to discover these alterations. Contrary to the implication of the trial court's ruling, dealers will not be allowed to close their eyes to the practice of altering odometer readings. The effect of the trial court's ruling would be to encourage used car dealers not to inspect the cars which they purchase. This would inevitably lead to the movement in interstate commerce of automobiles which are both less safe and of less market value than that indicated by the odometer reading.

*Simmons Auto Sales, Inc. v. Royal Motor Co., Inc.*, 489 So.2d 518, 521 (Ala.1986). We agree with the *Simmons Auto Sales, Inc.* court that public policy favors placing responsibility upon used car dealers to ascertain the actual mileage of the vehicles they purchase for resale.

 A.J.'s asserts that it should not be held liable for conveying inaccurate information regarding the Suburban's actual mileage because (1) it was relying on representations that appeared on the title supplied by the BMV or that were made by Newman, and (2) it disclaimed responsibility for inaccurate mileage through the contract for sale. Clearly, these defenses do not comport with the strong public policy concerns set forth in *Simmons Auto Sales, Inc.* Our review of the case law from federal courts and other states indicates that courts almost universally reject the former argument that it is a defense to a

claim arising under the Odometer Act that the dealer/seller was relying on the representation of another in reporting an inaccurate odometer reading. *See id.*

With regard to the latter argument, we cite with approval the Alabama Supreme Court's rejection of the contention that a dealer may contractually disclaim responsibility for providing false odometer readings:

> To the [defendant/seller]'s argument that the contract of sale contained an "as is" provision, we can only observe that it is this very defense that is subsumed by the Congressional legislation. The "as is" disclaimer, as it relates to mileage registration, gives way to the federal act's mandate for mileage certification. Again, we reiterate that, if the seller, in the exercise of reasonable care, has reason to believe the odometer reading is inaccurate, he has the option of checking the block opposite the certification "actual mileage unknown," and thus avoiding the risk of charging the buyer the higher price for a lower mileage motor vehicle.

*Id.* at 523. Public policy considerations dictate that A.J.'s cannot escape responsibility under the Odometer Act for providing false information by inserting a disclaimer to that effect in the contract for sale of the Suburban. The trial court did not err in denying summary judgment on this issue.

**5.**

 A.J. contends the trial court erred in rescinding the sale of the Suburban between A.J.'s and the Freets because the remedy of rescission was not sought in a timely manner.

 The Freets sought rescission of the contract based upon an allegation of fraud. Fraud in the inducement of a contract is a proper basis for rescission. *Hart v. Steel Prods., Inc.*, 666 N.E.2d 1270 (Ind. Ct.App.1996), *trans. denied.* The remedy of contract rescission functions to restore

the parties to their precontract position, that is, the status quo. *Stevens v. Olsen,* 713 N.E.2d 889 (Ind.Ct.App.1999), *trans. denied.* A request for rescission of a contract is addressed to the sound discretion of the trial court. *Barrington Management Co., Inc. v. Paul E. Draper Family Ltd. Partnership,* 695 N.E.2d 135 (Ind.Ct. App.1998). The party seeking rescission bears the burden of proving his right to rescission and his ability to return any property received under the contract. *Id.* On the other hand, the party appealing the trial court's grant of rescission has the burden of demonstrating that the trial court's decision was erroneous. *Id.* Rescission is appropriate where the party seeking rescission is not in default and the defaulting party can be restored to the same condition he occupied before the making of the contract. *Id.*

A.J.'s contends that rescission was erroneous here (1) because the Freets did not seek rescission within a reasonable amount of time after discovering the allegedly fraudulent act, and (2) because, in view of the fact that the Suburban was four years older when it was returned and the Freets had driven the vehicle during that period of time, return of the vehicle would not restore A.J.'s to its precontract condition.

A.J.'s is correct in observing that the rescission of a contract requires affirmative action immediately upon the discovery of the fraud. *INB Nat. Bank v. Moran Elec. Service, Inc.,* 608 N.E.2d 702 (Ind.Ct.App.1993), *trans. denied.* One who asks a court's aid in compelling the rescission of a contract must show that he or she exercised reasonable diligence in ascertaining the facts and thereafter promptly sought rescission within a reasonable time after discovering the fraud. *Id.* The question whether the party seeking rescission acted within a reasonable time is ordinarily a question of fact, but becomes a question of law where the facts have been ascertained. The determination of whether a delay in seeking rescission results in waiver depends on whether the delay was long enough to result in prejudice to the other party. *Id.*

It appears that the Freets' problems with the Suburban began soon after they purchased the vehicle. After a series of repairs, a mechanic told the Freets that he thought the vehicle had more miles on it than was indicated on the odometer. Soon after the Freets discovered that the actual mileage on the Suburban exceeded by 100,000 miles that which was reflected on the odometer, they wrote a letter to Newman basically seeking rescission of the contract for sale of the Suburban. The Freets sent the letter to Newman based upon their mistaken belief that she, not A.J.'s, owned the Suburban at the time they purchased it. Through subsequent discovery, the Freets learned that A.J.'s owned the vehicle at the time of purchase. Upon discovering the true owner, the Freets amended the complaint and added A.J.'s as a party defendant. Seven months elapsed between the filings of the original and amended complaints.

We conclude that the Freets exercised reasonable diligence in ascertaining that the mileage recorded on the disclosure statement was incorrect. Nothing of record suggests that the Freets reasonably should have discovered the mileage error sooner than they did. One should expect that a used vehicle with 80,000 miles on it might require repairs. Therefore, the occasional need for repairs, even if they commenced soon after the vehicle was purchased from a dealer in used vehicles, would not necessarily alert the owner that the vehicle had mileage in excess of the odometer reading. In the instant case, when such repairs became excessive even for a vehicle with 80,000 miles on it, a mechanic suggested that the Freets should investigate to ascertain whether the indicated mileage was accurate. Soon after learning of the inaccurate odometer disclosure, the Freets initiated efforts to rescind the sale. Nine months after the effort commenced, and seven months after suit was filed, the Freets discovered that A.J.'s

was the true owner of the Suburban when they purchased it. They immediately amended the complaint to add A.J.'s as a defendant. In addition to the fact that the Freets exercise reasonable diligence in ascertaining the true owner and rescinding the contract, we are unable to discern any prejudice to A.J.'s resulting from the delay. Therefore, we conclude that the Freets exercised reasonable diligence in discovering the alleged fraud and sought rescission within a reasonable time after discovering the alleged fraud.

 A.J.'s contends that rescission was not proper because the vehicle the Freets returned was four years older and therefore not in the same condition as when A.J.'s sold it. We reject the argument that simple return of the vehicle does not return A.J.'s to the requisite status quo as it existed before the sale. Rescission of a contract does not require that items acquired under the contract be returned in a condition identical to that in which they were acquired. Rather, if return of items in the original condition is not possible, rescission is appropriate so long as the rescinding party returns the reasonable value of that property. *See Hart v. Steel Prods., Inc.,* 666 N.E.2d 1270.

Although the Suburban was four years older when the Freets returned it, it had by that time undergone several major repairs. To that extent, its market value was enhanced. The record supports an inference that the value of such enhancement offset any diminution in value of the Suburban attributable to the additional age and mileage that accrued while the Freets owned the vehicle. Put another way, A.J.'s sold an eleven-year-old vehicle that had more than 180,000 miles on it and was in need of several major repairs. The Freets returned a fifteen-year-old vehicle that had undergone several of the aforementioned major repairs, with unspecified additional mileage. We do not deem the difference in value between what A.J.'s

sold and what it received in return to be significant for purposes of rescission.

### 6.

 Finally, we address a related damages issue that may confront the trial court following resolution of this appeal. Generally, a party bringing an action for fraud must elect between two remedies. *Hart v. Steel Prods., Inc.,* 666 N.E.2d 1270. One alternative is to affirm the contract, retain the benefits, and seek damages. The other is to rescind the contract, return any benefits received, and be returned to the status quo. An election to rescind the contract customarily forecloses the possibility of recovering general damages. In such cases, the rescinding party is entitled only to be returned to the status quo. Returning a rescinding party to the status quo usually requires returning the money or other things received or paid under the contract, together with reimbursement as special damages, for any reasonable expenditures incurred as a proximate result of the fraudulent conduct. The rescinding party must also restore all benefits received under the contract. *Id.* Therefore, the remedy sought by the Freets in the instant case, rescission of the contract, does not ordinarily contemplate compensatory or punitive damages. *Stevens v. Olsen,* 713 N.E.2d 889. However, under Indiana's Commercial Code, rescission of a contract based upon an allegation of fraud does not necessarily foreclose the possibility of recovering damages.

Ind.Code Ann. § 26–1–2–721 (West 1995) states:

> Remedies for material misrepresentation or fraud include all remedies available under this IC § 1971, 26–1–2 for non-fraudulent breach. In all suits based on fraud or material misrepresentation, if the plaintiff recovers judgment in any amount, he shall also be entitled to recover reasonable attorney fees which shall be entered by the court trying the suit as part of the judgment in that suit. *Neither rescission or a claim*

*for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy.*

(Emphasis supplied.) Harkening back to the days of the election of remedies doctrine and the former restrictive rules in that respect related to pleading, it might be argued that the emphasized language may be interpreted as permitting alternate *claims,* but not necessarily permitting alternative *recoveries.* The Comment accompanying IC § 26–1–2–721, however, clarifies the meaning of that provision:

> Purposes: To correct the situation by which remedies for fraud have been more circumscribed than the more modern and mercantile remedies for breach of warranty. Thus the remedies for fraud are extended by this section to coincide in scope with those for non-fraudulent breach. *This section thus makes it clear that neither rescission of the contract for fraud nor rejection of the goods bars other remedies unless the circumstances of the case make the remedies incompatible.*

(Emphasis supplied.)

■■■ Compensatory damages are meant to compensate a plaintiff for loss suffered as a result of another party's tortious act and to place him in the same financial position in which he would have been had the tort not occurred. *Remington Freight Lines, Inc. v. Larkey,* 644 N.E.2d 931 (Ind.Ct.App.1994). Rescission is appropriate only when it accomplishes the latter purpose, *i.e.,* returning the aggrieved party to his precontract condition. *See Conrad v. Universal Fire & Cas. Ins. Co.,* 670 N.E.2d 936. Viewed in this context, compensatory damages theoretically are not necessary when rescission has properly been granted because rescission of the contract placed the parties in their precontract conditions and negated any losses sustained as a result of the allegedly tortious conduct. Therefore, under the circumstances of this case, rescission of the contract is incompatible with general or compensatory damages, and rescission bars recovery of the actual or consequential damages that the Freets seek in their amended complaint. *See* IC § 26–1–2–721. The same cannot be said, however, of treble and punitive damages.

■■■ We have determined that questions of fact remain with respect to the liability of both A.J.'s and Newman under the Odometer Act. The Odometer Act penalty provision states:

**Civil action by private persons.**

**(a) Violation and amount of damages.** A person that violates this chapter [49 U.S.C.S. §§ 32701 et seq.] or a regulation prescribed or order issued under this chapter [49 U.S.C.S. §§ 32701 et seq.] with intent to defraud, is liable for 3 times the actual damages or $1500, whichever is greater.

**(b) Civil actions.** A person may bring a civil action to enforce a claim under this section in an appropriate United States district court or in another court of competent jurisdiction. The action must be brought not later than 2 years after the claim accrues. The court shall award costs and a reasonable attorney's fee to the person when a judgment is entered for that person.

49 U.S.C.S. § 32710. According to this section, a successful plaintiff may recover three times actual damages or $1500, whichever is greater, as well as costs and attorney fees. We have already determined that because the contract for sale of the Suburban was properly rescinded, the Freets by definition did not suffer actual or consequential damages. Therefore, the Freets' recovery against either defendant under 49 U.S.C.S. § 32710(a), if appropriate, is limited to $1500. In addition, the Freets may recover costs and reasonable attorney fees under 49 U.S.C.S. § 32710(b).

Finally, except with respect to the discussion of the statutes of limitations, we have not engaged in a separate discussion

of fraudulent misrepresentation, the third theory raised in the Freets' complaint. All parties agree that in order to recover under the Odometer Act, the Freets must prove that A.J.'s or Newman acted with the intent to deceive, *i.e.*, committed fraud. On the facts of this case, the fraud alleged as a separate theory in the complaint and the fraud that constitutes an element of the claims arising under the Odometer Act are one and the same. As we have previously indicated, there remain questions of fact concerning whether either A.J.'s or Newman engaged in fraudulent behavior with respect to the representations made relative to the Suburban's odometer reading. Therefore, the Freets' allegation of fraudulent misrepresentation remains viable and is not appropriate for summary judgment.

With regard to damages recoverable in the event that the Freets prevail on their claim of fraud, we make the following observations. We have already indicated that actual or consequential damages are not appropriate for claims of fraudulent breach of contract, in cases where the contract was rescinded by court order. A party may, however, recover punitive damages if there is clear and convincing evidence that the defendant acted with the requisite fraudulent intent. *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19 (Ind.Ct.App.1999); *see* IC § 26-1-2-721. "The purpose of punitive damages is to punish the wrongdoer and thereby deter others from engaging in similar conduct." *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d at 24. We have determined that punitive damages are not inconsistent with rescission. Therefore, the Freets may recover punitive damages if the factfinder determines that they sustained their burden of proof on the separate allegation of fraud contained in their amended complaint for damages.

In summary, we conclude that Newman is not a "supplier" within the meaning of the Deceptive Sales Act and thus is not subject to liability under that Act. More-over, the claim against A.J.'s arising under the Deceptive Sales Act was not timely filed. Therefore, we reverse the denial of both defendants' motions for summary judgment concerning those claims. The trial court is instructed to grant summary judgment in favor of both defendants with respect to the Freets' claims that arise under the Deceptive Sales Act. We affirm the trial court's order rescinding the contract of sale between the Freets and A.J.'s. Questions of fact remain with regard to the liability of A.J.'s and Newman, respectively, under the Odometer Act, and we therefore affirm the denial of summary judgment in favor of A.J.'s and Newman concerning claims arising under that Act. However, should either or both appellants be found liable to the Freets under the Odometer Act, damages are limited to $1500 per defendant under 49 U.S.C.S. § 32710(a), plus costs and reasonable attorney fees under 49 U.S.C.S. § 32710(b). We also affirm the denial of summary judgment in favor of A.J.'s and Newman on the separate allegations of fraud contained in the Freets' complaint. Should the factfinder determine that the Freets sustained their burden of proof under this theory, actual or consequential damages are not available. Punitive damages, however, are available if the factfinder deems them to be appropriate.

Judgment affirmed in part, reversed in part, and remanded with instructions.

GARRARD, Sr.J., and DARDEN, J., concur.